[No. 17806.  Department Two.  August 16, 1923.]

THE CITY OF SEATTLE, *Respondent*, v. EQUITABLE BOND
COMPANY, *Appellant*.[1]

TAXATION (6,106,138)—CONSTITUTIONAL RESTRICTIONS—LIEN AND
PRIORITY—LOCAL IMPROVEMENT LIENS—RIGHTS OF HOLDER OF DELIN-
QUENCY CERTIFICATES.  Where the county treasurer sells general tax
certificates of delinquency and thereby collects all the taxes levied
against the property, there was a full satisfaction of the state's
rights, without any commutation of the taxes which would violate
Const., Art. XI, § 9; and the purchaser took the state's lien subject
to city local assessment liens, without any right of subrogation to
the state's superior lien.

Appeal. from a judgment of the superior court for
King county, Gilliam, J., entered June 6, 1922, in favor
of the plaintiff, upon sustaining a demurrer to an af-
firmative defense, in an action to foreclose local assess-
ment liens, tried to the court.  Affirmed.

*John T. Hunt*, for appellant.

*Thomas J. L. Kennedy, Hugh R. Fullerton*, and
*J. Ambler Newton*, for respondent.

*Louis A. Dyar, amicus curiae.*

PARKER, J.—The plaintiff city commenced this action
in the superior court for King county, seeking fore-
closure of delinquent local assessments levied by it
against certain lots to aid in the payment of the cost of
local street improvements.  The defendant bond com-
pany was made a party defendant, because it had be-
come the purchaser from the treasurer of King county
of certain general tax certificates of delinquency the
lien of which it claimed to be superior to the city's
delinquent local assessment liens sought to be fore-
closed.  After the sustaining of the city's demurrer to
the bond company's affirmative defense setting up its

[1]Reported in 217 Pac. 721.

claim of superior lien under its general tax delinquent certificates, and the bond company's election not to plead further and to stand upon its denials and its affirmative defense, and after a trial upon the question of the validity of the city's local assessment liens, the trial court decreed foreclosure of the latter, holding them superior to the bond company's general tax liens, evidenced by its certificates of delinquency, from which the bond company has appealed to this court.

In July, 1911, the local assessments here sought to be foreclosed by the city were duly levied and confirmed against the lots in question, by an ordinance duly passed and approved by the city council and mayor. These assessments are past due and unpaid, and the city is still the holder thereof; none of them ever having been sold or transferred by the city by the issuance of certificates of delinquency or otherwise.

In April, 1918, and December, 1919, the bond company purchased from the treasurer of King county general tax certificates of delinquency, paying therefor the full amount of general taxes then due and unpaid and charged against the lots in question. No challenge is here made to the validity of the city's local assessments or the liens thereof against the lots in question, nor to the right of the city to foreclose such liens by this action, except as such claimed right on the part of the city may be impaired by the superiority of the bond company's general tax certificates of delinquency. No challenge is here made to the validity of the general taxes upon which the bond company's certificates of delinquency were issued, nor to the liens thereof against the lots in question, except as such liens may be impaired by the superiority of the city's local assessment liens here sought to be foreclosed.

The problem here presented is the same as the one presented and first discussed by us in the recent case

of *Seattle v. Everett,* 125 Wash. 39, 215 Pac. 337. We there held, after a somewhat painstaking examination and review of our statutes touching the subject, that a private purchaser of a general tax certificate of delinquency does not thereby acquire a lien against the property described in such certificate superior to valid local assessment liens acquired by a city in the exercise of its power to levy local assessments and still held by such city, notwithstanding the lien of the general tax for which such certificate of delinquency is issued is, while held by the county for the state and its taxing districts, superior to all local assessment liens by whomsoever held.   That decision, following those rendered by us in *Holzman v. Spokane,* 91 Wash. 418, 157 Pac. 1086, and *Lawrence v. Tacoma,* 103 Wash. 86, 173 Pac. 1017, was rested upon our local improvement act of 1911, in effect so providing.   Section 9393, Rem. Comp. Stat. [P. C. § 1028].   Unless we are to overrule these decisions, it seems plain that the bond company cannot prevail in this case upon the theory that the liens of its general tax certificates of delinquency are superior to the liens of the local improvement assessments here sought to be foreclosed by the city.

Counsel for the bond company ably presents an ingenious argument which, however, as we understand him, we think proceeds upon the erroneous theory that the bond company became the purchaser of the whole of the general tax lien possessed by the state, and that it thereby necessarily becomes subrogated to the whole of the tax lien rights possessed by the state; and that to deny the bond company such right of subrogation is in effect to impair its contract of purchase, in violation of its rights under both the state and Federal constitutions.   There might be some ground for such argument to rest upon if our statutes were silent on the question of what lien rights a general tax certificate of delin-

quency gave to a purchaser of such a certificate. It might then be argued, with some show of reason, that, inferentially, the sale of the state's tax lien rights carried with them the whole thereof, accompanied with all lien priorities with reference thereto possessed by the state. But such is not the contract of sale evidenced by the bond company's general tax certificate of delinquency under our statute, as then and since existing, as interpreted by our decisions above noticed. To here quote and analyze our statute showing the limited character of the lien right acquired by the purchaser of a general tax certificate of delinquency and the inferiority of such lien right so acquired with reference to a city's valid local assessment lien still held by it, would be but to unnecessarily repeat what was said in our decision in *Seattle v. Everett,* 125 Wash. 39, 215 Pac. 337. The bond company was a voluntary purchaser of its general tax certificates of delinquency, in the light of the statute then in existence and limiting the lien rights so acquired by it, and making such lien rights inferior to the city's local assessment liens. We think that this is all that need be here said in response to the contention made in behalf of the bond company that it is entitled to the rights here claimed by it under the doctrine of subrogation, and its claim in connection therewith of the impairment of its constitutional rights under its contract of purchase evidenced by its general tax certificates of delinquency.

Some contention is made in behalf of the bond company that, to withhold from it any portion of the whole of the lien rights of the state with reference to the general taxes for which the certificates of delinquency were issued, would be in effect a violation of the provisions of § 9, art. XI, of our state constitution, reading as follows:

"No county, nor the inhabitants thereof, nor the property therein, shall be released or discharged from its or their proportionate share of taxes to be levied for state purposes, nor shall commutation for such taxes be authorized in any form whatever."

The argument seems to proceed upon the theory that such a sale of a limited portion of a state's lien rights is, in a measure, a commutation of some portion of the taxes. We are quite unable to see how there has been commutated any portion of the taxes due to the state. By that sale the state collected every cent of the general taxes levied and charged against the lots in question. We are quite convinced that this is a full satisfaction of those taxes in so far as the state's rights are concerned. If the bond company was willing to take the general tax liens subject to the city's local assessment liens, as the statute provided, and pay the whole of the taxes for such limited lien rights, it seems to us quite plain that no constitutional right or duty has been violated thereby. It was in effect a bid by the bond company offering to take a lien less in rank than would subject every possible interest in the property to the payment thereof, just as under some systems of taxation a bidder offers to take a portion of a tract less than the whole and pay therefor the amount of the taxes due upon the whole. Manifestly, the state has the right to sell a limited estate in, or a limited lien upon, a tract of land, as well as the right to sell a limited physical portion of a tract of land for an amount equal to the taxes due on the whole tract; and, of course, any competent person or corporation is equally free to voluntarily make such a purchase.

We adhere to the views expressed in our former decisions above noticed. The decree is affirmed.

MAIN, C. J., TOLMAN, FULLERTON, and PEMBERTON, JJ., concur.